Irene Hurst McMahan SILCOX, Individually and as Administratrix of the estate of James Silcox, Deceased, Plaintiff-Appellee,

v.

UNITED TRUCKING SERVICE, INCORP., and Charles E. Lee, Defendants,

v.

Daniel J. TRIBELL, Attorney-Appellant.

No. 81–5033.

United States Court of Appeals, Sixth Circuit.

Argued April 15, 1982.

Decided Sept. 2, 1982.

Daniel J. Tribell, pro se.

William A. Watson, Middlesboro, Ky., Ervin L. Ball, Jr., Lentz, Ball & Kelley, P.A., Asheville, N. C., for plaintiff-appellee.

Before PHILLIPS, BROWN * and TUTTLE,** Senior Circuit Judges.

PHILLIPS, Senior Circuit Judge.

This case presents the question of whether it was proper for the district court to issue an injunction restraining the appellant from proceeding further in a state court with his claim for an attorney fee, when that issue had been decided adversely to him in the district court. For the reasons stated below, we affirm the judgment of the district court granting the injunction.

I

The original action in this controversy was a suit for wrongful death filed in the United States District Court by the plaintiff-appellee, Mrs. Irene Silcox, against defendants, Charles Lee and his employer, United Trucking Service, Inc. Jurisdiction was based on diversity of citizenship. The plaintiff's decedent, James Silcox, was killed in a collision with defendant Lee. The parties eventually agreed to a settlement of $101,000, which was paid into the district court in anticipation of the dispute as to attorney's fee at issue on this appeal. The original defendants no longer assert any interest in the settlement funds.

The present dispute is between Mrs. Silcox and the appellant, Daniel J. Tribell, her former attorney. Appellant claims an interest in the settlement funds, based on service rendered to Mrs. Silcox as her original attorney in the underlying claim against the defendants.

The defendants moved to have the funds paid into the court on March 30, 1978. Appellant Tribell filed a "Notice of Lien for Attorney's Fee" in the district court on April 3, 1978, asserting that he was entitled

to one-third of the funds as his attorney's fee. District Judge Eugene E. Siler, Jr. granted the motion of defendants for payment of the funds into the registry of the court and set a date for a hearing. On May 17, 1978, the defendants were dismissed with prejudice from the action and the court held a hearing on the attorney's fee issue. Appellant Tribell appeared, argued his case and cross-examined a witness. He also filed a motion requesting that the district court action be stayed pending the outcome of a state court suit for attorney's fee filed on that same day, May 17, 1978, in the Circuit Court of Bell County, Kentucky. The district court hearing was continued by Judge Siler, pending his resolution of the question of the ancillary jurisdiction of the court to hear the dispute.

On August 24, 1979, Judge Siler issued a memorandum opinion holding that the district court had ancillary jurisdiction over the attorney's fee dispute, and that appellant was not entitled to recover the fee claimed by him because he had been suspended from practice for nonpayment of dues by the Kentucky Bar Association at the time he had rendered the services for which he sought compensation. Appellant never appealed from this decision.

Appellant's action in the state court had proceeded in the meantime. On July 6, 1978, the state court overruled Mrs. Silcox's motion to dismiss, but stayed further proceedings pending resolution of the issues by Judge Siler. After the decision of the district court, the state court overruled another motion by Mrs. Silcox to dismiss, in which she asserted that the district court judgment precluded the state court from proceeding with the attorney's fee litigation on principles of res judicata. The state court determined that it had jurisdiction over the attorney's fee question and that Tribell would be entitled to recover on a *quantum meruit* basis.

---

* Circuit Judge Bailey Brown retired from regular active service under the provisions of 28 U.S.C. § 371(b) on June 16, 1982, and became a Senior Circuit Judge.

** The Honorable Elbert P. Tuttle, Senior Circuit Judge of the United States Court of Appeals for the Eleventh Circuit sitting by designation.

Appellee Silcox then filed a motion in the district court to enjoin appellant Tribell from proceeding further with the state court action. The district court determined on December 18, 1980, that it had the authority to issue the injunction under the "relitigation exception" of the Federal Anti-Injunction Act, 28 U.S.C. § 2283. The court then enjoined Tribell from taking any further actions with reference to any state court lawsuit instituted to collect an attorney's fee for services rendered to Mrs. Silcox. From this decision Tribell appeals.

## II

An examination of the record and the pleadings before the state court reveal the following undisputed or admitted facts regarding appellant Tribell's alleged representation of the Silcox estate.

Appellant Tribell originally was retained as counsel for the estate of the decedent and through his efforts Mrs. Silcox was appointed administratrix. Tribell also obtained the agreement of the underlying defendants to a $101,000 settlement. Mrs. Silcox, however, was not satisfied with this settlement and shortly thereafter discharged Tribell and retained her present counsel.

Upon his discharge, Tribell undertook to have Mrs. Silcox removed as administratrix of the estate of decedent, and have the parents of decedent appointed in her place. Pursuant to these efforts, Tribell adduced evidence undertaking to establish that Mrs. Silcox and the decedent had not participated in a valid ceremonial marriage. Meanwhile, Mrs. Silcox and the defendants ultimately agreed to a $101,000 settlement, the same amount for which Tribell originally had negotiated. Mrs. Silcox contends that this settlement was lower than it otherwise might have been, due to her weakened bargaining position as administratrix of the estate brought about by her former counsel's attempts to remove her. Tribell notified the parties of his intent to assert a one-third interest in the funds as a contingent fee for his having originally procured the settlement.

It is also undisputed that at the time Tribell served as attorney for Silcox, from May 1975 until January 1976, he was not licensed to practice law, having been suspended by the Kentucky Bar Association for nonpayment of dues in June 1970. He was not reinstated until November 24, 1976.

## III

This court has recognized that the power of a district court to enjoin a litigant from proceeding in a state action, although it should be exercised sparingly, exists under the provisions of the Federal Anti-Injunction Act, 28 U.S.C. § 2283. *Lamb Enterprises, Inc. v. Kiroff*, 549 F.2d 1052, 1060–62 (6th Cir.), *cert. denied*, 431 U.S. 968, 97 S.Ct. 2926, 53 L.Ed.2d 1064 (1977). The power "is based upon principles of equity deeply rooted in our system of jurisprudence," *Lamb Enterprises, supra*, 549 F.2d at 1060, and its exercise is permitted under the "relitigation exception" of the Anti-Injunction Act, which provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except . . . to protect or effectuate its judgments." 28 U.S.C. § 2283.

This court has interpreted the above exception to mean that "federal courts may enjoin the relitigation in state court of issues that federal courts have *fully and finally* adjudicated." *Lamb Enterprises, supra*, 549 F.2d at 1061, *citing International Association of Machinists & Aerospace Workers v. Nix*, 512 F.2d 125, 129–30 (5th Cir. 1975).

In *Lamb Enterprises, supra*, we found that the "relitigation exception" to § 2283 did not apply, because there was an unresolved question as to whether there had been a full and final adjudication of all the questions of law and fact in the prior federal action. 549 F.2d at 1061. We emphasized that principles of equity, comity and federalism oblige federal courts to act with great restraint, even where the power to grant an injunction has been found to lie within one of the exceptions to the Anti-Injunction Act. *Lamb Enterprises, supra*, 549 F.2d at 1062, *citing Mitchum v. Foster*, 407

U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972).

In issuing the injunction on the present case, District Judge Siler expressed both the need for restraint and his reason for finding the relitigation exception applicable:

This Court is nevertheless very reluctant to issue such injunctions as a general rule, for reasons of comity.... If there is any doubt as to the propriety of the injunction, it should not be issued....

However, in this case this matter has already been litigated in this Court in proceedings in which Mr. Tribell had an opportunity to participate and did in fact participate. If Mr. Tribell believed this Court's earlier decision was erroneous, he was free to move this Court to reconsider or appeal to the Sixth Circuit. Having failed to do so, he cannot now appeal to the Bell Circuit Court. Under these circumstances, there can be no doubt as to the propriety of forbidding Mr. Tribell from proceeding with his state court action.

In making this ruling, this Court has the utmost respect for the Bell Circuit Court and Judge Farmer Helton, an outstanding jurist and a fine person and personal friend of the undersigned judge. On the other hand, this Court cannot permit a litigant to drag other litigants to another Court in hopes of finding relief that is denied here. (Citations omitted.). Memorandum Opinion, pp. 3–4.

We first must decide whether the issue of entitlement of appellant to an attorney's fee was fully and fairly litigated in the district court. Appellant vigorously asserts on this appeal that he did not participate willingly in the district court proceeding, and that he was "placed in this situation by events not of his making." The record establishes, however, that appellant had full notice of the proceeding and an opportunity to present in the district court all his claims to an attorney's fee. The defendants originally moved to have the settlement funds paid into the registry of the district court because appellant had notified the parties

in his sworn deposition that he intended to collect a fee in the case:

[B]ecause this matter is being litigated in Federal Court of which I have been admitted to practice and remained admitted, or whatever you call it, and at no time have I ever been suspended from practicing in Federal Court. Because of my reinstatement and because of that fact and the contract and services that I have rendered, it is my intention to make every effort to collect a fee in this case. Tribell deposition, 21.

Tribell filed in the district court a "Notice of Lien for Attorney's Fee" on April 3, 1978, in which he stated:

Comes Daniel J. Tribell, Attorney at Law ... and hereby notifies this Court, the parties hereto, and all attorneys herein, that pursuant to KRS 30.200 he has a lien for attorney's fee in this action in an amount equal to One-Third (⅓) of any monetary settlement or judgment herein and any funds paid by defendants to or on behalf of plaintiff herein.

Further motions and/or other documents will be filed with this Court after the hearing on Defendants' "motion for Order Directing Settlement Funds Paid to Clerk of the United States District Court," is held herein ... on April 6, 1978.

Tribell appeared at the district court hearing on May 17, 1978, offering arguments on his behalf and cross-examining a witness from the Kentucky Bar Association who testified as to Tribell's suspension. Tribell signed a motion on that same day approving the payment of the funds into the court and the dismissal of the defendants from the case; he also filed another motion, asking the district court to refrain from any further action, pending the outcome of Tribell's state court suit which also was filed on May 17, 1978.

On August 24, 1979, Judge Siler issued his opinion finding that the district court had ancillary jurisdiction over the attorney's fee question, and that appellant was not entitled to any fee, because "it is clear that it would be against public policy for

this Court to enforce a contract for legal services made by a person who was not then a lawyer." We re-emphasize that Tribell never appealed from this decision.

■ The record clearly demonstrates that appellant argued in the district court the merits of his attorney's fee claim and the issue of the court's ancillary jurisdiction. He cannot now complain that the matter was not fully litigated because he asserts that he did not take full advantage of his opportunity to litigate it. "A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981). We, therefore, conclude that this matter was fully and finally litigated in the district court and it was within the power of the district court to protect its final judgment by injunction, under the relitigation exception of the Anti-Injunction Act.

### IV

Our inquiry does not end here. Having concluded that the claim of appellant under his attorney's lien was litigated fully and fairly in the district court, we now must examine the scope of the judgment of the court, in order to determine whether protection of the judgment justified the injunction against the appellant from proceeding in his *quantum meruit* action in state court.

This court has held that the scope and effect of a district court judgment in a diversity action is to be determined by federal, not state, law, "notwithstanding a contrary state rule of *res judicata*." *Cemer v. Marathon Oil Co.*, 583 F.2d 830, 832 (6th Cir. 1978). *See also* Restatement (Second) of Judgments § 87 and illustration 2 (1982). This is true in the present case, where the prior judgment was rendered in federal court and the subsequent proceeding brought in a state court. In *Cemer, supra*, we held that a final decision on a plaintiff's age discrimination suit was res judicata as to his subsequent breach of contract action, where both suits sought to remedy the same

wrong—discharge by the employer of the employee. We stated the rule to be that "[w]here two successive suits seek recovery for the same injury, a judgment on the merits operates as a bar to the later suit, even though a different legal theory of recovery is advanced in the second suit." *Cemer, supra*, 583 F.2d at 832.

It is clear that appellant's contract and *quantum meruit* claims in this case arise out of the same transaction or occurrence and seek recovery for the same injury, and that appellant could have brought both claims before the district court. *See Nash County Board of Education v. Biltmore Co.*, 640 F.2d 484, 486–93 (4th Cir.), *cert. denied*, 454 U.S. 878, 102 S.Ct. 359, 70 L.Ed.2d 188 (1981); Restatement (Second) of Judgments, §§ 24 & 25 (1982). Appellant's claim of entitlement to the one-third contingent fee under his contract was based on the same alleged fact—actual procurement of the settlement through his own efforts—that would form the basis of his claim in *quantum meruit*. In cases involving claims less similar than those in the present case, this court has found that the res judicata effect of the prior judgment barred the subsequent action. *See, e.g. Harrington v. Vandalia-Butler Board of Education*, 649 F.2d 434 (6th Cir. 1981) (prior Title VII employment discrimination action was res judicata to subsequent action under 42 U.S.C. § 1983, notwithstanding that § 1983 claim had not been considered maintainable against municipalities until a recent Supreme Court decision rendered after filing of first action).

In *Federated Department Stores, Inc. v. Moitie, supra*, 452 U.S. at 398, 101 S.Ct. at 2427, the Supreme Court stated:

Nor are the res judicata consequences of a final, unappealed judgment on the merits altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case.... [A]n "erroneous conclusion" reached by the court in the first suit does not deprive the defendants in the second action "of their right to rely upon the plea of res judicata.... A judgment

merely voidable because based upon an erroneous view of the law is not open to collateral attack, but can be corrected only by a direct review and not by bringing another action upon the same cause...."

The rule applies even where, as here, the appellant urges that the court was without jurisdiction to render its prior decision. *Baldwin v. Iowa State Traveling Men's Association*, 283 U.S. 522, 525, 51 S.Ct. 517, 518, 75 L.Ed. 1244 (1931). We, therefore, reject the argument of appellant that the district court abused its discretion in asserting ancillary jurisdiction over the attorney's fee issue, because that question should have been raised by appeal from the decision of the district court.

Applying these principles, we hold that the decision of the district court that the claim for attorney's fee of appellant was void for public policy was a final decision. That judgment was res judicata as to a subsequent claim for an attorney's fee brought in state court, even though brought under a theory of *quantum meruit*. We also note that the district court adhered to our admonition in *Lamb Enterprises, supra*, 549 F.2d at 1060, that, consistent with the policy of restrained exercise of the injunction power, the injunction should issue against the litigant, and not the state court, whenever possible. District Judge Siler did not enjoin appellant from proceeding with the state litigation until after the state court had indicated that it would not afford the prior federal judgment the res judicata effect to which it was entitled. The injunction was necessary to effectuate the res judicata effect of the judgment and to protect it from subsequent relitigation in the state court. The injunction issued by the district court was justified under the relitigation exception to the Federal Anti-Injunction Act, 28 U.S.C. § 2283.

For these reasons, the judgment of the district court is affirmed.