968 F.2d 1216
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Roy E. SHERMAN, Plaintiff-Appellant,
v.
William F. LUDINGTON; Chase Packaging Corp.; Union Camp
Corp.; Bag Merger Corp., Defendants-Appellees.
 No. 91-3936.
 United States Court of Appeals, Sixth Circuit.
 July 7, 1992.
 
 Before NATHANIEL R. JONES and ALAN E. NORRIS, Circuit Judges, and WOODS, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff-appellant, Roy E. Sherman, appeals the district court's grant of summary judgment to defendants-appellees, William F. Ludington; Chase Packaging Corp.; Union Camp Corp.; and, Bag Merger Corp., on plaintiff's claims for intentional and/or negligent misrepresentation. The district court determined that Ohio res judicata principles bar plaintiff's claims. For the following reasons, we affirm the result of the district court judgment, but rely on the federal doctrine of res judicata to reach that conclusion.
 
 I.
 
 2
 Plaintiff-appellant, Roy E. Sherman, an employee of Chase Packaging Corp. for twenty-six years, was terminated from his job as Chase's Chagrin Falls, Ohio office manager, effective on or about January 6, 1989. In June, 1989, Sherman brought a suit in federal district court against Chase Packaging Corp. alleging federal claims of age discrimination and denial of pension and employment benefits. Sherman v. Chase Packaging Corp., No. 89-CV-1230 (N.D.Ohio, June 27, 1989) ("Sherman I ") (Jt.App. pp. 7-11). The Court took jurisdiction over the federal questions as well as pendant claims for age discrimination under Ohio law, wrongful discharge, negligent performance of contractual obligations, and promissory estoppel.[1] Chase Packaging Corp. moved the Court for summary judgment on September 11, 1990. Seventeen days before trial, appellant motioned for leave to amend the complaint. Eleven days before trial, plaintiff moved for leave to file a second amended complaint to dismiss the claim for negligent contractual performance and add state law claims for intentional and/or negligent misrepresentation. Appellant offered a transcribed January 13, 1989 telephone conversation between Sherman and William Ludington, the President of Chase Packaging Corp., as a basis for the amended claims. In the conversation, Ludington is purported to have told Sherman:
 
 
 3
 I'll try to help you. I haven't got a job to give you at Chase. I won't fool you. If one comes up, you're gonna be the first guy I'm gonna call for it, but I can't create one. I just can't create a job just because its what I'd like to to (sic) give you employment.
 
 
 4
 (Jt.App. p. 33). The district court denied appellant's motions on the eve of trial, finding that the facts that formed the basis of the new claims, i.e., the January, 1989 phone conversation, "either were or should have been apparent to plaintiff's counsel at the outset of this case." Sherman v. Chase Packaging Corp., No. 89-CV-1230, slip op. (N.D.Ohio, Oct. 22, 1990) (Jt.App. pp. 154-155). In that same opinion, the Court granted defendant's motion for summary judgment. (Jt.App. pp. 174). Plaintiff then appealed to this Court. This Court affirmed the district court judgment. Sherman v. Chase Packaging Corp., No. 90-4033, slip op. (6th Cir. May 21, 1991) (Jt.App. p. 176). This Court agreed that because the January, 1989 Ludington-Sherman telephone conversation:
 
 
 5
 occurred five months prior to the filing of the original complaint ... the facts which formed the basis of plaintiff's 'new claims' were known to him from the time the original complaint was filed and should have been apparent from the outset.
 
 
 6
 (Jt.App. p. 179). The Court explained that plaintiff's motions made so close to trial could be and were properly denied because of the absence of new facts (Jt.App. p. 178).
 
 
 7
 While the appeal was pending before this Court, plaintiff filed a second action in Ohio state court alleging intentional and/or negligent misrepresentation based on Ludington's January, 1989 telephone conversation with Sherman.[2] The matter was removed to federal district court based on diversity. Sherman v. William F. Ludington, et.al., No. 91-CV-0673 (N.D.Ohio, March 21, 1991) ("Sherman II ") (Jt.App. p. 13). Defendants jointly motioned the Court for summary judgment. (Jt.App. p. 58). The Court, relying on Ohio res judicata principles, granted defendants' motion. Sherman v. William F. Ludington, et. al., No. 90-CV-0673, slip op. (N.D.Ohio, Sept. 10, 1991) (Jt.App. p. 305). It is from this judgment that plaintiff now appeals.
 
 II.
 
 8
 In Sherman I, the district court enjoyed jurisdiction over the federal question claims and pendent state law claims. The district court in Sherman II enjoyed jurisdiction over appellant's claims of intentional and negligent misrepresentation because of diversity of citizenship. Relying on the language found in Hackler v. Indianapolis & Southeastern Trailways, 437 F.2d 360 (6th Cir.1971) and Migra v. Warren City School District Board of Education, 465 U.S. 75 (1985), the Sherman II Court applied Ohio res judicata law, barring plaintiff's cause of action and granting defendants' motion for summary judgment on that ground. In their brief, appellees first questioned whether federal res judicata principles should, in fact, govern this particular situation. Appellant did not respond to this inquiry. At oral argument, this Court requested both parties to submit supplemental briefs arguing their position on the proper res judicata principle to apply.
 
 
 9
 Appellant cites Hackler and Federal Insurance Co. v. Gates Learjet Corp., 823 F.2d 383 (10th Cir.1987), and urges that the Erie doctrine requires the application of Ohio res judicata law in diversity cases before a federal district court. Appellees insist that persuasive authority indicates that a judgment given by a federal court acting under federal question jurisdiction is to receive federal res judicata examination in a later action. Following review of the briefs and the law, this Court concludes that the district court's decision to utilize Ohio law, instead of federal law, was improper.
 
 
 10
 This Circuit has supported the use of federal res judicata principles where a plaintiff, initially in federal court on a federal claim, later brought a diversity suit. Cemer v. Marathon Oil Co., 583 F.2d 830, 832 (6th Cir.1978). The Cemer Court announced that federal law controls the effect of an earlier federal judgment. Id. at 832. This Circuit has also determined that federal res judicata is proper against federal decisions that originated with diversity jurisdiction. Silcox v. United Trucking Service, Inc., 687 F.2d 848 (6th Cir.1982).[3]
 
 
 11
 Other circuits have agreed that federal res judicata properly applies when the earlier suit involved a federal claim and resulted in a federal judgment. Kale v. Combined Insurance Company of America, 924 F.2d 1161 (1st Cir.1991), Poe v. John Deere Co., 695 F.2d 1103 (8th Cir.1982), Nilsen v. City of Moss Point, Miss., 701 F.2d 556 (5th Cir.1983). Of particular significance is the recent First Circuit opinion in Kale ("Kale II "). In his first suit ("Kale I "), the plaintiff invoked federal question jurisdiction under the Age Discrimination in Employment Act ("ADEA") and brought related state law claims under pendent jurisdiction. The Kale I Court granted summary judgment for defendant and dismissed the ADEA claim. The Kale I Court then dismissed the state law claims. When the plaintiff later brought state claims into federal court through diversity jurisdiction, the Kale II Court stated:
 
 
 12
 While the parties do dispute whether the other state-law claims pleaded in Kale II were "brought" in Kale I, we need not enter that debate. The judgment in Kale I was rendered by a federal court acting under its federal question jurisdiction. Hence, the availability of a res judicata defense in this case depends on the federal-law standard. See, e.g., Cemer, 583 F.2d at 832.
 
 
 13
 Kale, 924 F.2d at 1164. Whether or not all of plaintiff's claims were actually pleaded in Kale I, the Kale II Court invoked the doctrine of federal res judicata. The Kale II Court said, simply:
 
 
 14
 [T]he disposition of the ADEA claim in Kale I comprised a suitable springboard for the deployment of res judicata.
 
 
 15
 Id. at 1164.
 
 
 16
 Appellant's contentions that Hackler and Gates mandate the use of state law res judicata are unpersuasive. Hackler, as well as Migra, stand for the proposition that state law collateral estoppel principles apply when the second cause of action is based on diversity and the first action has yielded a state law judgment. The cases do not, however, address the proper preclusionary rule when the original judgment is entered in federal court, as is the case here. Furthermore, the Gates decision is expressly limited to a situation far different then that presented here. In Gates, the Tenth Circuit proclaimed:
 
 
 17
 We do not announce a broad rule regarding whether state law or federal law should determine the preclusive effect of a federal diversity court judgment. In this case, where the question is whether there is privity between the parties in different diversity suits, a federal court must employ state rules of privity.
 
 
 18
 Gates, 823 F.2d at 386. The issue in Sherman does not involve privity. Due to the self-imposed restriction, Gates has no application here.
 
 
 19
 Appellant also argues that the authority of Silcox, Poe and Nilsen do not apply in the instant matter because those cases are limited to situations where plaintiff essentially pleads the same claim in the subsequent action. Specifically, appellant insists that the pleading of a separate and unrelated claim from that asserted in the earlier suit, in this case, intentional and/or negligent misrepresentation, precludes following the authority of Silcox, Poe and Nilsen.
 
 
 20
 There is no clear formula for determining when a subsequent suit is barred by res judicata when a party, such as appellant here, argues that it is presenting a separate and unrelated claim. This Court is, however, comfortable relying on the authority of Kale in asserting that the failure or decision not to plead a particular claim in the earlier suit should not bear on the determination of which rule of law to apply. Kale, 924 F.2d at 1164.
 
 
 21
 In the instant action, plaintiff included federal question and ancillary state law claims in his first suit. The federal district court granted summary judgment and dismissed all of the pleaded claims. When the plaintiff later brought a further claim, the lower court was obligated to follow the rationale of Kale and Cemer and apply federal res judicata principles.
 
 III.
 
 22
 The standard for deciding a motion for summary judgment is well-established. Review of the grant or denial of summary judgment by this Court is governed by the same standard. Hines v. Joy Mfg. Co., 850 F.2d 1146, 1149 (6th Cir.1988). Pursuant to Fed.R.Civ.Proc. 56(c) a motion for summary judgment is to be granted only if the evidence indicates that no genuine issue of material fact exists. In order to avoid summary judgment, the opposing party must have set out sufficient evidence in the record to allow a reasonable jury to find for him at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electric Ind. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). The sufficiency of the evidence is to be tested against the substantive standard of proof that would control at trial. Anderson, 477 U.S. at 248. The moving party has the burden of showing that there is an absence of evidence to support the non-moving party's case. Celotex v. Catrett, 477 U.S. 317, 325 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. In disposing of a motion for summary judgment, this Court must consider the evidence in the light most favorable to the non-moving party, but may weigh competing inferences for their persuasiveness. Matsushita, 475 U.S. at 587-588. Review is limited to consideration of those materials that were before the lower court when it granted summary judgment to the defendant-appellee.
 
 IV.
 
 23
 Application of federal res judicata requires a finding of certain essential elements, namely: 1) a final judgment on the merits of the earlier action; 2) identity of the cause of action in both the earlier and later suits; and 3) the identity of the parties or privies in the two suits. Kale, 924 F.2d at 1165. Two of the three elements are in evidence without dispute. In the instant case, summary judgment of Sherman I satisfactorily acts as a final judgment on the merits and fulfills the first requirement. In addition, the parties in both actions are either the same or privies, thereby fulfilling the third criteria. Therefore, the sole dispute involves whether the two suits amount to the same cause of action.
 
 A.
 
 24
 This Court concurs in the Kale Court's concession that "the phrase 'identity of cause of action' is more easily stated than defined." Kale, 924 F.2d at 1166 (citation omitted). The Kale Court does, however, provide a helpful and detailed discussion to identify a single "cause of action." Specifically, the Court said:
 
 
 25
 if the claims asserted in [the two suits], ... were sufficiently related, that is, if they were founded upon the same transaction, arose out of the same nucleus of operative facts, and sought redress for essentially the same basic wrong, the two suits advanced the same cause of action notwithstanding any differences in remedies sought or theories of recovery pleaded.
 
 
 26
 Id. at 1166. Plaintiff argues that his second lawsuit sets forth a fraud subsequent to a discharge claim which is quite different from either of his earlier breach of contract or wrongful discharge claims. Plaintiff also insists that the facts and evidence giving rise to the Sherman II claims are separate and distinct from the facts and evidence required to prove the Sherman I claims. A review of the pleadings and orders reveals that Sherman II, albeit presenting a facially distinct theory of recovery from Sherman I, is the same cause of action as Sherman I.
 
 
 27
 To invoke federal res judicata, "there must be ... an identity of the facts creating the right of action and of the evidence necessary to sustain each action." Westwood Chemical Co., Inc. v. Kulick, 656 F.2d 1224 (6th Cir.1981). The most difficult determination to make is whether the facts and evidence necessary to proceed with Sherman II are the same as in Sherman I.
 
 
 28
 In Sherman I, plaintiff argued, among other claims, age discrimination, breach of promise, and negligent contractual performance. All the claims related to Sherman's discharge from Chase Packaging Corp. In support of these claims, plaintiff alleged misrepresentations concerning his employment status. Indeed, in his brief in opposition to Chase Packaging Corp.'s motion for summary judgment and as an example of these misrepresentations, plaintiff stated that Ludington told him, one week following his effective termination date, that if any position opened, he would be the first person called. Plaintiff then argues in Sherman I that available positions were filled by individuals much younger than he. Now, in Sherman II, plaintiff asserts fraudulent misrepresentation, based on the exact same conversation.
 
 
 29
 Appellant admits, in his brief opposing summary judgment in Sherman II, that his brief opposing summary judgment in Sherman I twice refers to the Sherman-Ludington conversation. This Court found at least four occasions where appellant specifically referred to the Sherman-Ludington conversation as evidence of misrepresentations.[4] Appellant responds by insisting that these references were made solely as evidence of his claim for discriminatory discharge.
 
 
 30
 It is obvious that appellant viewed this particular conversation to be a significant aspect of the facts and evidence necessary to prove the claims alleged in Sherman I. It is irrelevant to this Court that appellant intended to use the conversation only as evidence of a discriminatory discharge in Sherman I, and not to show intentional and/or negligent misrepresentation. What is relevant, for purposes of federal res judicata, is that the facts and evidence which make up part of appellant's claims in Sherman I are the exact same facts and evidence that are necessary to prove his claims in Sherman II. The principle of federal res judicata is only concerned with whether the claims arise from the same operative facts, not with a particular party's intention regarding their use. Based on the pleadings and plaintiff's admitted reliance, this Court can only conclude that the operative facts and evidence which form the basis for the Sherman II claims, are an integral part of Sherman I.
 
 
 31
 Second, the events relevant to both suits all took place around the same time and constitute the same transaction. Sherman was discharged on January 6, 1989. The conversation between Sherman and Ludington took place on January 13, 1989. The lower court explained:
 
 
 32
 The fact that Sherman was allegedly terminated one day and then promised first chance at a new position several days later does not lead to the conclusion that his claims arose at different times.
 
 
 33
 (Joint Appendix, at 310-311). Appellant's termination, the telephone conversation one week later and the subsequent hiring of younger individuals all involve the same transaction.
 
 
 34
 Finally, both suits seek compensation for the same basic injury, i.e., plaintiff's initial discharge and continued loss of employment. The plaintiff, in Sherman I, included all evidence that surrounded his discharge, including the after-discharge statement by Ludington, in asserting his claims for breach of promise and negligent contractual performance. He is now prohibited, in Sherman II, from asserting that the conversation was an entirely different wrong giving rise to a separate and distinct cause of action.
 
 
 35
 There is every indication from the record that Sherman II was the same cause of action as Sherman I, as defined under Kale. Furthermore, the facts and evidence appellant expected to prove the claims in Sherman II can be found in Sherman I. That being the case, all three criteria for application of federal res judicata have been met.
 
 B.
 
 36
 Appellant maintains that even if the Court finds that Sherman I and Sherman II constitute the same cause of action, the Court should not apply the federal rules of res judicata because the facts and evidence that give rise to the claims in Sherman II were not available until shortly before Sherman I was decided, on October 22, 1990. Appellant insists that the facts necessary to prove the elements of intentional and/or negligent misrepresentation did not come to his attention until the September 4-6, 1990 depositions. Specifically, appellant argues that it was not until these depositions that he became aware that positions had been filled by others and that Sherman had not been given 'the first call,' as Ludington had promised in the January, 1989, telephone conversation. Appellant maintains that because it was not until September, 1990, that he became aware of the necessary injury to assert a claim for intentional and/or negligent misrepresentation, and because the Sherman I Court prohibited him from amending his complaint at that late date, he has not had a full and fair opportunity to litigate these claims.
 
 
 37
 The federal rule of res judicata takes into account such a circumstance. Succinctly put,
 
 
 38
 final judgment by a court of competent jurisdiction bars a subsequent suit between the same parties and on the same cause of action not only as to all matters that were litigated in the first proceeding but also as to all issues that could have been litigated. (citations omitted).
 
 
 39
 Interstate Pipe Maintenance, Inc. v. FMC Corp., 775 F.2d 1495, 1497 (11th Cir.1985); see, Johnson v. United States, 576 F.2d 606, 611 (5th Cir.1978), Kale, 924 F.2d at 1164.
 
 
 40
 Appellant unsuccessfully attempted to amend his complaint to include the negligent and/or intentional misrepresentation claims seventeen, then eleven days before trial in Sherman I. The district court in Sherman I expressly held that the information necessary to proceed on these claims was known to plaintiff at the time of the original complaint and denied the motion to amend prior to granting Chase Packaging Corp. summary judgment. Sherman v. Chase Packaging Corp., No. 89-CV-1230, slip op. (N.D.Ohio, Oct. 22, 1990) (Jt.App. pp. 154-155). Plaintiff appealed that decision and this Court upheld the lower court. Sherman v. Chase Packaging Corp., No. 90-4033, Slip Op. (6th Cir. May 21, 1991). In its opinion, this Court specifically stated:
 
 
 41
 [I]n Answers to Plaintiff's First Set of Interrogatories and Request for Production of Documents served on February 7, 1989, defendant provided documents including a list of all salaried employees with their dates of birth and dates of hire, a list of all office managers from 1985 through 1989, and a "List of Salaried Hires January, 1988 to Date," including a job description and date of hire. Identified as office managers in these documents are J. Drake and R. Ludington. Thus, it is not true as plaintiff alleges that 'plaintiff and counsel were unaware [prior to the September 4-6, 1990 depositions] ... that jobs had, in fact, become available and those jobs were offered and filled by younger persons (i.e., J. Drake and R. Ludington).' Because plaintiff unduly delayed making this claim and because granting the motion would cause prejudice to defendant (who had no notice), it was not an abuse of discretion for the district court to deny the motion. (citations omitted) (emphasis added ).
 
 
 42
 (Jt.App. p. 179).[5] This Court previously ruled on the issue of whether plaintiff could have brought the amended claims earlier. This Court concluded that plaintiff was aware of the subsequent hirings for over six months prior to the September, 1990 depositions. Specifically stated above, this Court determined that the information regarding the hiring of younger individuals came to the attention of appellant from defendants' February, 1990 Answers to Plaintiff's Request for Interrogatories and Production of Documents. For these same reasons, this Court again finds that for over six months prior to his attempting to amend his complaint, appellant was in possession of the facts and evidence that give rise to the claims asserted in Sherman II.
 
 
 43
 Even though plaintiff's claims for intentional and/or negligent misrepresentation were never addressed on their respective merits, because plaintiff possessed the facts and evidence and had the opportunity to litigate the claims at an earlier date, the doctrine of federal res judicata will be applied.
 
 V.
 
 44
 For the above reasons, this Court affirms the lower court's decision granting defendants' motion for summary judgment. However, the Court bases its decision on application of the federal rule of res judicata and not Ohio law.
 
 
 
 *
 The Honorable George E. Woods, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The federal age discrimination and unlawful discharge claims are covered within 29 U.S.C. §§ 621-634. The interference with employee rights claim invokes ERISA, 29 U.S.C. § 1140. The state age discrimination claim is based in Ohio Revised Code § 4101.17
 
 
 [2]
 Union Camp Corp. and Bag Merger Corp. are included, as defendants, in the second action as a result of their alleged merger or acquisition of Chase Packaging Corp. Chase Packaging President William F. Ludington is included as a defendant under the theory of respondeat superior
 
 
 [3]
 The means by which parties come within federal jurisdiction, whether it be through diversity or federal question, should not weigh heavily in determining which law of res judicata to apply. In Kern v. Hettinger, 303 F.2d 333 (2d Cir.1962), a case that considered the effect of res judicata from a federal decision in a diversity action, the Court said:
 One of the strongest policies a court can have is that of determining the scope of its own judgments ... It would be destructive of the basic principles of the Federal Rules of Civil Procedure to say that the effect of a judgment of a federal court was governed by the law of the state where the court sits simply because the source of federal jurisdiction is diversity....
 Id., at 340.
 
 
 [4]
 Pages 11, 19, 29, and 33 of Plaintiff's Brief in Opposition to Summary Judgment in Sherman I. (Jt.App. pp. 114, 122, 132, and 136)
 
 
 [5]
 This Court made a crucial typographical error in its opinion. The answers to Plaintiff's First Set of Interrogatories and Request for Production of Documents was served on plaintiff on February 7, 1990, not 1989